UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                          |   |                            |
|------------------------------------------|---|----------------------------|
| HECTOR L. MANGUAL,                       | ) |                            |
| Plaintiff,                               | ) |                            |
|                                          | ) |                            |
| v.                                       | ) | CIVIL ACTION               |
|                                          | ) | NO. 15-40017-TSH           |
|                                          | ) |                            |
| CITY OF WORCESTER, MATTHEW EARLY,        | ) |                            |
| MICHAEL HANLON, and KELLEN SMITH,        | ) |                            |
| Defendants.                              | ) |                            |

## ORDER AND MEMORANDUM OF DECISION
January 23, 2018

HILLMAN, D.J.

### Background

Hector L. Mangual ("Mangual" or "Plaintiff") has filed a federal civil rights claim against the City of Worcester ("City"), and Detective Sgt. Matthew Early ("Det. Sgt. Early"), Detective Michael Hanlon ("Det. Hanlon") and Detective Kellen Smith ("Det. Smith") of the Worcester Police Department (the City, Det. Sgt. Early, and Dets. Hanlon and Smith collectively referred to as "Defendants") under 42 U.S.C. §1983 for violation of his Constitutional due process rights, his right to be free from unreasonable search and seizure and his right to be free from use of excessive force against him. Mangual has also filed Massachusetts state law claims against the Defendants for violation of the Massachusetts Civil Rights Act ("MCRA"), Mass.Gen.L. ch. 12, §§11-H-I, violation of the Massachusetts

Privacy Act, Mass.Gen.L. ch. 214, §1B, conspiracy, assault and battery and intentional infliction of emotional distress. Specifically, Mangual alleges that he was subjected to an unlawful strip and body cavity search and excessive force was used against him in an interrogation/holding room located at the Worcester Police Department, including officer(s) kicking him, slamming his face and refusing to loosen his handcuffs when he complained they were too tight.

This Order and Memorandum of Decision addresses Defendants' Motion for Summary Judgmnet (Docket No. 71). For the reasons set forth below, that motion is *allowed,* in part and *denied*, in part.

### Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving

party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

## Facts

On October 24, 2011, Worcester Police Department ("WPD") Vice Squad Detective Dana Randall ("Det. Randall") was told by a confidential, reliable informant ("CI") that Mangual was in possession of a large, black handgun, had boasted of committing a number of armed robberies in the Main South area of Worcester, and was headed to the Main South area pf the City with the intent to commit additional armed robberies and sell drugs. The CI provided Det. Randall with a detailed description of Mangual, including the clothes he was wearing and a distinct physical mark located on Mangual's neck. The CI also told Det. Randall that Mangual had a large amount of heroin on his person for sale, which was located in his buttock's area. As a result of Det. Randall receiving this information, he and five other detectives from the WPD Vice Squad, including Det. Sgt. Early and Dets. Smith and Hanlon,

went to the Main South area to look for Mangual. The detectives were all in plain clothes wearing badges and/or clothing with the word "Police" displayed.

At approximately 3:45 p.m., Mangual was walking to go catch a bus home around the area of Sycamore Street and Main Street, in the vicinity of a used car lot. He was walking towards City Hall. Out of nowhere, he was rushed by a number of men who grabbed him and handcuffed his hands behind his back. Based on the information they had that Mangual was armed, Dets. Smith and Randall conducted a pat frisk. One of the items recovered was what appeared to be a large frame semi-automatic handgun with "Smith and Wesson" printed on the handle; the hammer of the pistol was in the "cocked back" position. It was later determined that this "gun" was a replica and not a working firearm. Mangual's pockets were emptied and Det. Smith put all of his property into his baseball cap, including the "gun," a steak knife, $110.00, his wallet, and keys. Another police officer in a black vest patted Mangual's body all over and stated that Mangual was either "clear" or "clean." Mangual was *Mirandized* and asked if he had any additional drugs or weapons on his person. Det.Sgt. Early advised him that he believed he had heroin on him and would allow him to retrieve the drugs so there would not be the necessity to conduct a search. Mangual denied having any drugs on his person.

Mangual was unclear as to why he had been stopped and did not cooperate with the officers' attempts to conduct a more thorough search of his person. The officers put him inside a red SUV. Det. Sgt. Early and Mangual sat in the back seat and Dets. Hanlon and Smith sat in the front. Mangual asked why he was not being taken in the transportation wagon which had arrived at the scene. Det. Sgt. Early responded, "oh no, you're getting strip

searched." When they arrived in at the Worcester Police Station garage, Mangual claims that Det. Sgt. Early ordered his detectives to assure the cameras were off. Mangual was held outside the vehicle for a few moments and then another officer came out and said, "they're good." Mangual was then brought inside and put into a cell. Per WPD Policy and Procedure 720, strip searches are not conducted on camera; however, the video monitor is turned on and the supervisor relays the actions being taken so that the audio portion of the camera system records the search while the arrestee remains outside of the visible frame of the video camera. Initially, Det. Sgt. Early stepped inside the cell with Mangual. Once Dets. Smith and Det. Hanlon joined them, Det. Sgt. Early stepped out. He then stood in the cell doorway and observed the subsequent events.

    Det. Smith grabbed Mangual and flipped him over in the air and slammed him on his face. Mangual was caught off guard, but he managed to break the fall with minimum impact to his face. Det. Smith then put him down and jumped on his back, putting his full weight on him. Mangual could not breathe— he tried to relax and felt his wrist being pressed, which was painful. Mangual heard Det. Sgt. Early command him to comply and stop resisting. Dets. Hanlon and Smith grabbed him and stood him up, slamming him flat against the wall. Mangual fell, and collapsed to the floor. Mangual was kicked and stepped on. Det. Hanlon then took his sneakers off while Det. Smith pinned him face down. Next, Mangual felt his pants being yanked off his body; he felt the cold floor on his leg areas. Mangual could hear Det. Sgt. Early saying, "Hector, spread your cheeks." He then felt his underwear pulled off him. While this was happening, Det. Smith was on top of him twisting his wrist. Mangual

remembers asking Det. Sgt. Early to look at his wrist—he was in pain and thought was cut around his wrist area.

Mangual asked to see a doctor. Det. Sgt. Early said that nobody was hurting him. Mangual heard someone ask, "Who's doing it?" Det. Smith was still on top of him when Mangual feel fingers spreading his butt cheeks open. Mangual clenched his buttocks and heard "relax, Hector, just relax". Mangual, who felt violated, yelled "please don't do this, please don't do this to me." Det. Hanlon continued to press his buttocks wide apart. Mangual was in pain in his buttocks area and at the same time, Det. Smith kept pressure on his back and was twisting wrist. Mangual screamed in pain. He kept hearing Det. Sgt. Early say, "Hector spread your cheeks, bend over, spread your cheeks". Mangual then felt fingers entering his anus cavity; he again yelled out in pain. Mangual felt cold, then a burning sensation as he felt fingers inside his body. He heard Det. Sgt. Early saying, "game's up." Mangual yelled and asked the officers stop violating him. Det. Smith was hitting him on his back side.

A plastic bag was removed from Mangual's rectum. Subsequently, it was determined to contain five separately packaged gram bags of heroin. The plastic bag was placed into an evidence bag and labelled "body cavity" by Officer Fred McGill, the evidence officer. Mangual was then left alone on the floor. He pleaded to have his pants and other clothing returned, but was denied. Dets. Smith and Hanlon both dressed him-- they would not uncuff him and allow him to dress myself. Mangual was put him in another cell room for several hours before he was taken out, uncuffed and booked. Mangual was never released on bail. He was charged in Worcester Superior Court with: Carrying a Dangerous Weapon, in violation of

6

Mass.Gen. L. ch. 269, §10(b); Possession With Intent to Distribute (Class A) Second or Subsequent Offense, in violation of Mass.Gen. L. ch. 94C, § 32(b); Resisting Arrest; and Disturbing the Peace, in violation of Mass. Gen. L. c. 272, § 53. As to the first three offenses, Mangual was charged as a habitual offender. Mangual pled guilty to the following offenses: carrying a dangerous weapon, possession of a Class A substance (heroin) with intent to distribute, resisting arrest and disturbing the peace. The second/subsequent drug offense and habitual offender charges were dismissed. During the pendency of the criminal case, Mangual filed a motion to suppress all physical evidence, including the heroin, on the basis that the WPD detectives conducted an unlawful search in violation of his rights under the Fourth and Fourteenth Amendments. It is unclear whether that motion was ever ruled on.

## **Discussion**

The Defendants asserts that they are entitled to summary judgment on Mangual's Section 1983, MCRA, and state tort law claims for unlawful search at the Worcester Police Department headquarters because these claims are barred under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994), and the doctrine of judicial estoppel. They further argue that Mangual has failed to allege any congnizable claims arising from the search of his person and his arrest at the initial scene and that he cannot establish the essential elements of a Section 1983 claim for supervisory/*Monell* liability against the City. In his opposition and at the hearing, Mangual clarified that his claims arise out of the search conducted at the Worcester Police Department headquarters-- he is not asserting any separate claims relating to his arrest arrest and/or police conduct at the intitial scene, rather he inlcuded those facts and

7

circumstances in his recitation of the factsr to give context to the later interactions at the police station.[1]

### *Mangual's Federal and State Civil Rights Claims and His State Law Claims Based on the Alleged Unlawful Search*

In order to establish a claim under Section 1983, Mangual must establish that a person acting under the color of law denied him a right secured by the constitution or by federal law.There is no question that the individual Defendants were acting under the color of law at the time of the alleged illegal search and therefore, the issue before the Court is whether any Defendant violated his constitutional rights. Mangaul alleges that the indivdual Defenadants violated his rights under the Fourth and Fourteenth Amendments by conducting an illegal body cavity searh of his person at the Worcester Police Departyment *and* by using excessive force in connection with effectuating the search.

As for Mangual's MCRA claims, he must prove that his exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion. *See* Mass. Gen. L. ch. 12, § 11I. The MCRA is the state "counterpart" to Section 1983 and, in general, is coextensive therewith. The primary difference is that to succeed on an MCRA claim, a plaintiff must also show that the violation of rights occurred "by threats, intimidation or coercion." *Bally v. Northeastern Univ.,* 403 Mass. 713, 532 N.E.2d 49, 52 (1989). "A 'threat' means the 'intentional exertion of pressure to make another fearful or apprehensive of

---

[1] Mangual provided a very detailed and lengthy description of what he alleges occurred at the scene on Main and Sycamore Streets where the officers initially confronted him. Since Mangual is not pursing any claims relating to his arrest or any police conduct at the initial scene, I have opted to provide only a cursory summary of those events.

injury or harm.' " *Goddard v. Kelley,* 629 F.Supp.2d 115, 128 (D.Mass.2009)(citation to quoted case omitted). "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. *Id.* "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do. *Id.* The direct violation of a constitutional right does not establish a MCRA violation because "it is not an attempt to force someone to do something the person is not lawfully required to do." *Columbus v. Biggio,* 76 F.Supp.2d 43, 54 (D.Mass.1999).

*Mangual's Unlawful Search and Seizure Claims*

Mangual claims that Det. Sgt. Early and Dets. Hanlon and Smith violated his Fourth and Fourteenth Amendment rights to be free from an unreasonable search and seizure when they conducted a search of his body cavity at the Worcester Police Department. The Defendants assert that Mangual's claims are barred by *Heck*, which provides that where a plaintiff asserts a violation of Section 1983 "based upon alleged unlawful actions that would 'necessarily imply' that a prior conviction was invalid, the plaintiff must prove that the conviction has been reversed, expunged, declared invalid by an appropriate state tribunal or called into question by issuance of a writ of habeas corpus by a federal court." The question thus becomes whether a finding that the individual Defendants search of Mangual's person was unlawful would "necessarily imply" that his conviction for drug possession was invalid. Little discussion is warranted with respect to this claim. Mangual pled guilty to possession of heroin (a Class A substance) with intent to distribute; the heroin was discovered during the strip search conducted at the Worcester Police Station. A finding that the search was unlawful would invalidate Mangual's conviction and therefore, is barred by *Heck*. Accordingly, the

Defendants are entitled to summary judgment on Mangual's Section 1983 unlawful search claim.[2]

To the extent that Mangual has alleged state law claims alleging that the body cavity search of his person was unlawful, I agree with those judge's in this District that have held that the reasoning of *Heck* "appl[ies] with equal weight to state-law claims. The favorable-termination requirement was intended to prevent collateral attacks on convictions 'through the vehicle of a civil suit, and was based on the 'hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.'". *Cabot v. Lewis*, 241 F.Supp.3d 239, 257 (D.Mass. 2017); *see also Aldrich v. City of Cambridge*, Civ. Act. No. 12-12273-RGS, 2012 WL 6622495 at *8 & n. 10 (D.Mass. Dec. 18, 2012). Therefore, to the extent that prevailing on his state law claim would undermine the validity of his conviction, I find that Mangual's state law claims are barred. *See Cabot*, 241 F.2d at 239. Accordingly, I find that Mangual's MCRA unlawful search claim, his claim for violation of the Massachusetts Privacy Act, Mass.Gen.L. ch. 214, §1B, and his conspiracy and intentional infliction of emotional distress claims (to the extent these latter two claims are based on the alleged unlawful search) are also barred. Given that I find that Mangual's unlawful search

---

2  As pointed out by Mangual, even if a search or seizure is unconstitutional, evidence discovered as a result of that search may be used to support a conviction in state court if it is admissible based upon the independent source, inevitable discovery or harmless error doctrine. In such cases, a civil rights claim asserting that the search was unlawful would not necessarily invalidate the plaintiff's conviction. *See Heck*, 512 U.S.at 487, 114 S.Ct. 2364 n.7. However, Mangual fails explain how doctrines such as inevitable discovery, harmless error or the like would cure the Fourth Amendment violation alleged in this case. Accordingly, I find that this claim is barred by *Heck*. *See Fairbanks v. O'Hagan*, 255 F.Supp.3d 239, 245 (D.Mass. 2017)(plaintiff claims that unlawful search claim are not barred by *Heck*, but fails to address how alternative discovery doctrines would cure alleged Fourth Amendment violation).

claims are barred by *Heck*, it is not necessary for me to address Defendants' assertion that the claim is barred by judicial estoppel.

### *Mangual's Federal and State Civil Rights Claims and His State Law Claims Based on the Alleged Use Of Excessive Force*

A plaintiff's excessive force claims are also barred by *Heck* where the judgement in his favor would necessarily imply the invalidity of his convction. However, *Heck* would bar such a claim only where the plainitff's "excessive force claim and the conviction [are] so interrelated factually, so as to bar the §1983 claim." *Thore v. Howe*, 466 F.3d 173. 180 (1st Cir. 2006). Applying the law in this case, Mangual's claims are arguably barred to the extent extent he alleges that during the strip search, the officer(s) used excessive force when they spread his "butt cheeks," or probed his rectum with their fingers in the process of removing the plastic baggie containing the drugs. However, his allegations that he was subjected to excessive force when during the course of the search the officers kicked him, punched him, body/face slammed him, jumped on and kneed him, and twisted his wris are not "so interrelated factulally" such that previaling on his Sectioin 1983 claim would necessarily imply the invalidity of his conviction. Therefore, Mangual's Section 1983 excessive force claim is not barred by *Heck*.[3] Likewise, his state law MCRA claim, his claims for excessive force and assault and battery would not be barred by *Heck*, nor would his conpiracy and intentional infliction of emotional distress claims (to the extent that they related to the Defendants alleged use of excessive force).

---

[3] At the Final Pretrial Conference, the Court will give the parties the opportunity to argue their positions regarding the scope of Mangual's excessive force claim given the parameters set forth by the Court in this discussion.

Defendants also argue that Mangual's claims for alleged use of excessive force are barred by judicial estoppel. Judicial estoppel "is a doctrine which 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' Unlike the doctrine of issue preclusion, judicial estoppel does not require that the issue have been actually litigated in the prior proceeding." *Thore*, 466 F.3d at 181 (citation to quoted case and internal citation omitted). The First Circuit has held that admissions of facts during a prior guitly plea colloquy by a criminal defendant do not *per se* binding on that individual in a subsequent civil rights action. *Id.*, at 182. This case is a prime example of why applying such a *per se* rule could result in the perpetration of a grave injustice. Defendants have provided the Court with a copy of Mangual's plea colloquy. It is clear that only a bare-boned version of the facts was read into the record to support Mangual's guilty plea. Indeed, it is not even apparent from the factual recitation that there was a search conducted at police headquaters. Instead, the factual recitation infers that the search was conducted at the time of the intitial stop on Main and Sycamore Streets. However, Mangual is not pursuing any claims related to anyting which happened prior to the events which took place at the Worcester Police Department. Under these circumstances, I do not find that Mangual's "current position is directly inconsistent with facts admitted at his pleay colloquy." *Id.*, at 185. Accordingly, I do not find that Mangual's claims are barred by the judicial estoppel doctrine. *See Id.*, at 183 (courts are reluctant to find that individual should be bound by recitation of facts in plea agreement because, among other reasons, guilty pleas do not necessarily establish absolute historic facts).

Finally, Defendants argue that summary judgment is warranted, essentially, because other than Mangual's self-serving statements, there is no evidence to support his claims. They also allege that Mangual fails to set forth any facts which would establish that he suffered any damages and therefore, has failed to establish an essential element of his claims. I disagree and find that taking the facts in a light most favorable to Mangual, which I am obligated to do at the summary judgment stage, there are genunie issues of material fact which preclude a finding of summary judgment.[4]

## Conclusion

It is hereby Ordered that:

Defendants' Motion for Summary Judgment (Docket No. 71) is ***allowed***, in part and ***denied***, in part, as provided in this Order and Memorandum of Decision.

/s/ Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[4] Defendants are correct that Mangual's Section 1983 unlawful search claim against the City under *Monell v. New York City Dep't of Social Services*, 486 U.S. 658, 98 S.Ct. (1978). is barred by *Heck*. However, his Section 1983 excessive force claims are not so barred. Because the parties have agreed to bifurcate such claims, the Court does not find that on this record, it would be beneficial to undertake an analysis of whether Mangual has asserted sufficient facts to establish supervisory and *Monell* liability against the City based on his Section 1983 excessive forces claims.